663 A.2d 720

**COMMONWEALTH of Pennsylvania**

v.

**Calvin JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued March 9, 1995.

Filed Aug. 9, 1995.

154

Bradley S. Bridge, Asst. Public Defender, Philadelphia, for appellant.

Norman Gross and George S. Leone, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before DEL SOLE, FORD ELLIOTT and CERCONE, JJ.

DEL SOLE, Judge:

In this appeal, we must determine whether the trial court violated Appellant's State and Federal Constitutional right to counsel when it removed trial counsel for unauthorized review of confidential information relating to a Commonwealth witness. We hold that the removal of Appellant's counsel, under the circumstances of this case was not a violation of Appellant's State or Federal guarantees.

Appellant was arrested in 1993 for the murder of Elvira Hayes who was killed in February of 1981. At the time of Ms. Hayes' death, her son L.P. was 2¼ years old. Young L.P. was found sleeping on the body of his deceased mother as she laid in the second floor hallway of their home. Ms. Hayes died by strangulation, but no one was charged with the murder at the time. The victim's sister, Brenda Thompson, and her husband adopted L.P., and he was taken to the Philadelphia Child Guidance Clinic for counseling shortly after the murder to help him cope with his mother's death. When L.P. exhibited difficulties in learning and school behavior, he was evaluated at the Irving Schwartz Institutes. Then, in 1988, L.P. was placed in a partial hospitalization program at the Eastern Pennsylvania Psychiatric Institute (EPPI). At the end of 1990, he left the program and returned in January 1991 for one month of inpatient treatment. During the partial hospitalization program, L.P. was evaluated at Children's Seashore House, and he was also evaluated by school personnel regularly.

Thirteen years after his mother's death, L.P. provided a statement that prompted the arrest of Appellant. He recalled seeing the Defendant lying on top of his mother at the place where the body was found. He testified at the preliminary hearing that although he had not related this to anyone until recently, he "always had the picture" in his mind.

The Public Defender Association was appointed to represent appellant. In preparing for trial, Thomas Innes and William Bachmann, filed motions for discovery of Lamar's entire psychiatric file from every institution that evaluated him. The

defense argued that since L.P. did not disclose his memory of the night of the murder until thirteen years after the event, his psychiatric records were necessary for the proper preparation of the defense.

At a hearing on December 22, 1993, the defense informed the court that an order was necessary to obtain the psychological records of L.P. due to their confidential nature. The court determined that the proper procedure was to order the records be produced in court at a time certain for review by the judge who would determine whether relevant information was contained in the records that should be released to counsel. The records from the Child Guidance Clinic were produced in court, and, after judicial review, they were made available to defense counsel. Thereafter, the court issued a separate order dated December 29, 1993 to EPPI to produce in court on January 11, 1994 any and all records relating to L.P. Despite the court order, the EPPI records were hand delivered to defense counsel who read and copied them. The EPPI records also contained L.P.'s records from the Irving Schwartz Institute, Children's Seashore House and the Philadelphia school system. When the trial court realized the extent to which the court order had been violated by defense counsel, it decided to provide both sides with L.P.'s psychological evaluations to remedy any unfair advantage the defense gained by perusing the EPPI records before sending it to the court. The Commonwealth, however, did not review the records but petitioned to have a child advocate appointed to protect L.P.'s rights.

The court appointed Louis Schoener, Esquire as child advocate for L.P. since neither he nor his guardian, Ms. Thompson, had waived his right to confidentiality regarding his mental health records. A hearing was held on July 12, 1994 where Mr. Schoener argued that L.P.'s records were absolutely privileged by 42 Pa.C.S.A. § 5944 [1] and *Common-*

---

1. **Confidential communications to psychiatrists or licensed psychologists**

   No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be,

*wealth v. Smith,* 414 Pa.Super. 208, 606 A.2d 939, *alloc. denied,* 533 Pa. 624, 620 A.2d 490 (1992) and *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992) (*en banc*), *alloc. denied,* 531 Pa. 638, 611 A.2d 711 (1992). Mr. Schoener also suggested that the best recourse to protect confidentiality was to remove defense counsel. The Commonwealth also held the position that removing defense counsel was the only means to protect L.P.'s rights without jeopardizing Appellant's right to a fair trial. After a hearing was held on August 2, 1994, the court removed the Public Defender Association as counsel for Appellant and appointed new counsel. We now review this action.[2]

> without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.
>
> 42 Pa.C.S.A. § 5944.

2. The Commonwealth moved to quash this appeal as interlocutory. It argued that since this appeal is from an order removing court-appointed counsel, the concerns expressed by this court in *Commonwealth v. Cassidy, infra,* involving the expenditure of money for privately retained counsel necessitating the right of immediate review of a removal order do not apply. The motion to quash was referred to the full-court and was denied.

Appellant also relied on *Cassidy, infra,* for the proposition that a pre-trial appeal of an order disqualifying defense counsel is immediately reviewable. In that case, we applied the test set forth in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), for determining what constitutes a final order. An order that appears interlocutory on its face is considered final and appealable if: 1) it is separable from and collateral to the main cause of action; 2) the right involved is too important to be denied review; and 3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost. This test is now codified by Pennsylvania Rule of Appellate Procedure 313.

In *Cassidy,* where the defendant retained private counsel, we determined that the order removing counsel was appealable since it met the requirements of the *Cohen* test. We reasoned that the order disqualifying Cassidy's counsel was separable from and collateral to the main cause of action, the right to counsel of one's choice is protected by the Sixth Amendment and is too important to be denied review, and the right to counsel of choice will be irreparably lost if review is postponed until final judgment because the defendant would have been forced to pay for and proceed to trial without counsel of choice, and, if convicted,

We recognize the significance of the right to counsel. In *Commonwealth v. Cassidy,* 390 Pa.Super. 359, 568 A.2d 693 (1989), *appeal denied,* 525 Pa. 641, 581 A.2d 567 (1990), we stated:

> Criminal defendants are given numerous rights under our state constitution: the right to counsel; the right to know the charges filed against them; the right to face the witnesses testifying against them; the right to subpoena individuals to testify in their defense; the right to a speedy trial; the right against self-incrimination; and the right to trial by jury. *See* Pa. Const. art. 1, § 9 (Supp.1989). Of all of these rights, the right to counsel is arguably the most important. It is the key which opens the door to all of a defendant's other rights.

*Id.* at 390 Pa.Super. 364, 568 A.2d at 695–696.

Appellant correctly states that Article 1, Section 9, of the Pennsylvania Constitution and the Sixth Amendment of the U.S. Constitution provide a criminal defendant with the right to counsel of his choice. *Commonwealth v. Novak,* 395 Pa. 199, 150 A.2d 102 (1959).

> "[T]he accused regardless of financial status is guaranteed the right to the assistance of counsel, **either counsel of his own choosing,** or if indigent or otherwise unable to secure counsel counsel [sic] assigned by the court. *Gideon v. Wainwright,* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ]." (emphasis added).

defendant would have to appeal to secure the right to be represented by counsel originally retained. Then, if awarded a new trial on appeal, the defendant may not possess sufficient funds to finance representation by originally retained counsel. We agree that unlike the situation in *Cassidy,* if review of the order removing court-appointed counsel had been postponed until final judgment, Appellant would not suffer the financial harm contemplated since he was not paying for counsel. However, the financial ability of the defendant is not the test for irreparable harm. Being required to proceed to trial where counsel of choice has involuntarily been removed can be devastating to a defendant. Tactics and strategy at the first trial can lead to disaster that cannot be remedied. Further, to permit an immediate appeal from an involuntary order removing counsel only in cases where counsel is privately retained implies a two tiered system of criminal justice, a situation that should be avoided.

*Moore v. Jamieson,* 451 Pa. 299, 307, 306 A.2d 283, 288 (1973). However, a criminal defendant is not entitled to court-appointed counsel of choice at the outset of representation, *Commonwealth v. Stiles,* 229 Pa.Super. 411, 323 A.2d 841 (1974), nor is the choice of retained counsel an absolute right. *Commonwealth v. Baines,* 480 Pa. 26, 389 A.2d 68 (1978). Instantly, the trial court determined that Lamar's psychiatric records are protected from disclosure by 42 Pa.C.S.A. § 5944 and defense counsel's action of reviewing the EPPI files prior to review by the trial court eradicated that protection. The trial court further stated that Appellant's indigence was not a factor considered by the court when deciding whether to remove counsel. The court commented that "... if any defense counsel, privately retained or appointed, had acted as the Public Defender has, the court would have been in the same position and would have taken the same course of action." (Trial court op. filed Sept. 14, 1994 at 14). We agree that this is the appropriate standard where removal of court appointed counsel is being considered over the objection of both the defendant and counsel.

█ Appellant relies on several cases seeking to support his view that the trial court erred in ordering removal. Appellant's reliance is misplaced. In *Moore v. Jamieson, supra,* at 299, 306 A.2d 283, our supreme court held that a court rule requiring attorneys to forego taking any additional criminal cases if the lawyer already has ten or more criminal cases which are over a year old was defective as too vague and overbroad due to lack of any standard to challenge the reason for the delay in any particular case. The court also decided that the rule unnecessarily infringed upon the defendants' right to counsel of their choosing in violation of the Sixth Amendment, and to counsel's right to pursue the profession because it is not reasonably related to the state interest in reducing the backlog of cases.

In *Cassidy, supra,* at 390 Pa.Super. 359, 568 A.2d 693, the trial court granted a motion to disqualify the defendant's attorney because he represented a co-defendant in a federal prosecution. Following the co-defendant's conviction, he cooperated with the state in prosecuting defendant Cassidy. The Commonwealth perceived counsel's representation as a con-

flict of interest. We held that, under the Sixth Amendment, a presumption must be recognized in favor of the defendant's counsel of choice, and to overcome that presumption, there must be a showing of actual conflict or a showing of a serious potential for conflict. Since the record did not show a conflict or potential for conflict, we determined that the right to counsel should not be interfered with in cases where the potential for conflicts of interest is highly speculative and the court should have afforded Cassidy the presumption in favor of his counsel of choice.

*Commonwealth v. Hess,* 532 Pa. 607, 617 A.2d 307 (1992) was also cited by Appellant. In that case, the trial court entered a temporary restraining order to require the defendant's attorney in a drug case to preserve the retainer received for legal representation during pendency of the Commonwealth's forfeiture claim. Our Supreme Court held that the Forfeiture statute violated Article 1, Section 9 of the Pennsylvania Constitution as it applies to the payment of attorney's fees for criminal representation prior to conviction. Although the state has an interest in removing the profits of drug activity, this interest is not furthered by depriving the defendant of assets for obtaining an attorney prior to conviction. The state interest could be accomplished effectively without unduly infringing upon defendant's right to counsel and the Forfeiture statute did not provide the narrowest infringement consistent with effectuating the state's interest.

In the case before us, Appellant's chosen counsel deliberately violated a court order requiring psychotherapy records be delivered to the trial court for review to determine whether they could be utilized by the attorneys. Nevertheless, Appellant asserts that the removal of his counsel for violating the court order interferes with his right to have counsel of his choice. It is well settled that the psychotherapeutic records of a witness are absolutely privileged, absent the consent of the patient. 42 Pa.C.S.A. § 5944.

In *Commonwealth v. Kennedy, supra,* at 413 Pa.Super. 95, 604 A.2d 1036, the defendant raised the issue of whether Appellant's state constitutional rights of confrontation and compulsory process were violated by the denial of access to

absolutely privileged psychotherapeutic files not in the possession of the prosecution. Relying on *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied,* 518 Pa. 617, 541 A.2d 744 (1988), we held that the absolute privilege of confidentiality would not be subject to balancing against a defendant's right of confrontation because that would destroy the right which the privilege sought to protect. We noted in *Kennedy* that the statutory privilege was created due to the state's interest in promoting successful therapeutic treatment and in protecting the fundamental right of its citizens to the privacy of their most intimate statements communicated during psychotherapeutic sessions.

■ Unlike *Moore v. Jamieson, Cassidy,* and *Hess,* the case before us involves a statutorily enacted absolute privilege. As in the *Kennedy* case, we do not think that a balancing between Appellant's constitutional right to counsel of choice against the statutory privilege would be appropriate. It is clear that these therapy records are unavailable for defense use. Our concern here is only whether the removal of defense counsel was an unwarranted measure to employ and unnecessarily infringed upon his constitutional right to counsel.[3]

■ "When a defendant's selection of counsel, under the particular facts and circumstances of a case, places the fairness and integrity of the defendant's trial in jeopardy, the defendant's right to counsel of choice may be justifiably denied." *Commonwealth v. Cassidy,* 390 Pa.Super. 359, 369, 568 A.2d 693, 698, citing, *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). Here, the trial court remarked that it did not realize the magnitude of the violation committed by defense counsel until after they filed petitions to re-open the preliminary hearing and petitioned again to receive the entire record. The trial court believes that defense counsel would be unable to delete from their memories the information absorbed after reviewing the psychotherapeutic

---

3. Although not an issue in this case, even the trial court's *in camera* review of Lamar Person's psychotherapy files was error. See *Commonwealth v. Kennedy, supra,* at 413 Pa.Super. 95, 604 A.2d 1036 and *Commonwealth v. Kyle, supra,* at 484, 533 A.2d 120.

records. The trial court was also not convinced that less drastic measures, such as motions *in limine,* could successfully be utilized to prevent the use of the information derived from the privileged records.

It was defense counsel's blatant disregard for the court's unambiguous order and the child witness's right to confidentiality which placed the fairness and integrity of Appellant's trial in jeopardy. We conclude that the trial court did not abuse its discretion by removing counsel under the circumstances of this case, and such action does not constitute a violation of Appellant's State or Federal Constitutional right to counsel. Therefore, we affirm the order removing defense counsel.

Order affirmed.